IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
SOUTHERN DIVISION

| | |
|---|---|
| **Judy M. Shepard,** | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action Number |
| | ) 08-03275-CV-S-JTM |
| **Pete Green, Secretary of the Army,** | ) |
| | ) |
| Defendants. | ) |

# ORDER

In January of 2005, plaintiff Judy M. Shepard (Shepard) was employed as a civilian employee by the United States Army as a Lead Supply Technician. Beginning in February of 2006, Shepard was supervised by Sharon Wilkes ("Wilkes"). Tension thereafter developed between Shepard and Wilkes. In March of 2006, Shepard (through her physician) informed the Army that the stressful environment being precipitated by Wilkes' supervision was exasperating Shepard's hypertension. Subsequently, Shepard requested a reasonable accommodation from the Army. In August of 2007, Shepard was permanently reassigned by the Army to a different position under a different supervisor.

At issue in the present litigation are the employment discrimination complaints that Shepard has lodged against the Army for conduct prior to her permanent transfer. Specifically, in her Complaint, Shepard alleges that:

  (1) the Army unlawfully discriminated against Shepard based on her protected EEO activity [Count I],

  (2) the Army failed to accommodate Shepard's physical disability [Count II], and

  (3) the Army subjected Shepard to a hostile work environment based on her physical disability [Counts III and IV].

Presently pending before the Court is the Army's motion for summary judgment on each of Shepard's claims. The Court will address each claim in turn.

## A. Retaliation

Both Title VII and the Rehabilitation Act[1] prohibit retaliation against employees who initiate or participate in a proceeding or investigation that claims their employer violated Title VII. 42 U.S.C. § 2000e-3(a) [Title VII]; 29 U.S.C. §794(d) (*incorporating* 42 U.S.C. § 12203(a)) [Rehabilitation Act]. The burden-shifting framework articulated by the landmark Supreme Court case of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817 (1973) is utilized to determine the viability of a summary judgment motion raising a retaliation claim.[2] *Lewis v. Heartland Inns of America, L.L.C.*, 591 F.3d 1033, 1042 (8th Cir. 2010). Under the *McDonnell Douglas* application, an employee must first demonstrate a *prima facie* case of retaliation. *Id*. Such a *prima facie* case of retaliation requires an affirmative showing by an employee that:

    (1)    the employee engaged in protected conduct;

---

[1] Because of her underlying disability discrimination claims, Shepard arguably may pursue a retaliation claim against the Army under either the Rehabilitation Act or under Title VII. *See*, *e.g.*, *Sherman v. Runyon*, 235 F.3d 406, 409 (8th Cir. 2005) (Rehabilitation Act); *Recio v. Creighton University*, 521 F.3d 934, 939 (8th Cir. 2008) (Title VII). The legal standards for the claims are identical. *See*, *e.g.*, *Lopez v. Kempthorne*, — F.Supp.2d —, —, 2010 WL 174889, op. at *19 (S.D. Tex. Jan. 14, 2010); *Totten v. Norton*, 421 F.Supp.2d 115, 118 n.2 (D.D.C. 2006) (commenting that the "analysis would be the same" regardless whether the plaintiff brought a retaliation claim under the Rehabilitation Act or Title VII).

[2] Employees claiming illegal retaliation may establish the legal viability of their claims by resorting to either direct or indirect evidence. Shepard does not rely upon any direct evidence of retaliation. Consequently, application of the *McDonnell Douglas* analysis is mandated. *See*, *e.g.*, *Strate v. Midwest Bankcentre, Inc.*, 398 F.3d 1011, 1015 n.4 (8th Cir. 2005).

(2) a reasonable employee would have found the challenged retaliatory action by the employer to be materially adverse; and

(3) the materially adverse action was causally linked to the employee's protected conduct.

*Brenneman v. Famous Dave's of America, Inc.*, 507 F.3d 1139, 1146 (8th Cir. 2007). Upon a *prima facie* showing by an employee, "a presumption of retaliation arises, and the burden of production shifts to the employer to advance a legitimate reason for the employment action." *Hughes*, 506 F.3d at 679. If the employer does advance such a reason, then "the presumption drops out and 'the trier of fact proceeds to decide the ultimate question: whether plaintiff has proven that the defendant intentionally discriminated against the plaintiff.'" *Id*. (*quoting Ryther v. KARE 11*, 108 F.3d 832, 836 (8th Cir. 1997) (*en banc*)). However, "[t]he ultimate burden of persuasion remains with the employee to show the adverse employment action was motivated by intentional retaliation." *Id*.

In this case, the Army argues that Shepard cannot meet the "adverse action" portion of the *prima facie* case. To that end, in her summary judgment pleadings, Shepard identifies two[3] actions taken by the Army after June 29, 2006 (the date that Shepard's supervisors learned of her initial EEO complaint) that satisfy the *prima facie* case, specifically:

(1) ordering Shepard to return to the position of Lead Supply Technician following a temporary detail to another position, and

(2) not providing any work and/or preventing Shepard access to supplies needed to perform as a Lead Supply Technician.

---

[3] There may have been other actions that Shepard believes constituted adverse actions carried out in retaliation for her EEO activity, but they are not so identified in Shepard's pleadings with the Court.

Thus, the legal question arises as to whether these actions meet the standard to satisfy a *prima facie* case for retaliation.

To establish an adverse employment action in the context of her retaliation claim, Shepard must demonstrate that a reasonable employee would have found the Army's actions "materially adverse," meaning they "well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Higgins v. Gonzales*, 481 F.3d 578, 589 (8th Cir.2007) (*quoting Burlington Northern & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68, 126 S.Ct. 2405, 2415 (2006)). Under the facts of this cases, the Court finds that the actions of the Army do not rise to this level.

It is true that Shepard was returned to her position as a Lead Supply Technician in October of 2006, but that occurred because her previous temporary detail had expired. Shepard argues that the decision of the Army "was calculated to cause [Shepard] distress in connection with her employment because she would again be working under Wilkes. Given the sparse record, the Court fails to see how returning an employee to their original position following the conclusion of a temporary detail can constitute reprisal. It is true that there previously had been conflict between Shepard and Wilkes and it is also true that conflict would arise again between the two women after Shepard's return. However, the mere act of returning Shepard (after she had filed an EEO complaint) to her position after the completion of her detail is simply not enough – absent other factors – to dissuade a reasonable worker from making or supporting a charge of discrimination.

With regard to Shepard's alleged adverse action, *i.e.*, not providing any work and/or preventing Shepard access to supplies needed to perform as a Lead Supply Technician, again the

evidence does not rise to the necessary level. According to Shepard's sworn deposition testimony, after she returned to the position of Lead Supply Technician:

> I had a broken [computer] monitor. I had nothing to work with when I got there. . . . I had access to all keys before I was sent to the detail. And then [after returning from the detail,] I asked for keys and only could have a key to the building and one to the office. . . . Plus, I had a partition in the room prior to me going to the detail that was just a little bit of privacy for me, and it had never been an issue , never been a problem. Then [when I returned from the detail], it became a dangerous thing in the room that [Wilkes] had to have removed.

The Court does not necessarily dispute that these actions were personally upsetting to Shepard; however, as noted, the test for an adverse actions is an objective one. Furthermore, the actions taken by the employer must arise above the level of "trivial harms." *Recio v. Creighton University*, 521 F.3d 934, 940 (8th Cir. 2008). The Court concludes that the actions allegedly undertaken by the Army are akin to trivial harms and would not dissuade a reasonable employee from exercising EEO rights. *Compare Clegg v. Arkansas Dept. of Corrections*, 496 F.3d 922, 929-30 (8th Cir.2007) (no material adverse employment action based on employer's failure to provide employee with employment tools); *Devin v. Schwan's Home Services, Inc.*, 491 F.3d 778, 786-87 (8th Cir.2007) (no material adverse employment action based on assignment of poorly organized substitute truck).[4] As such, the Court finds that Shepard has not established a *prima facie* case of retaliation under *McDonnell Douglas*.

---

[4] It should also be noted that after Shepard returned to the Lead Supply Technician position she complained about the broken monitor and the limited keys and, shortly thereafter, the monitor was repaired and additional keys were provided to Shepard. The Eighth Circuit has held "that a demotion or denial of a promotion, even when accompanied by a loss in pay, is not an adverse employment action when it is corrected in a timely manner." *Jackson v. United Parcel Service, Inc.*, 548 F.3d 1137, 1141 (8th Cir. 2008).

5

## B. Failure to accommodate

Disability discrimination claims under the Rehabilitation Act[5] may arise from either alleged disparate treatment of a disabled employee or an alleged failure to provide reasonable accommodations to a disabled employee. *Peebles v. Potter*, 354 F.3d 761, 765-66 (8th Cir. 2004). In this case, the parties are in seeming agreement that Shepard's disability discrimination claim is based on an alleged failure of the Army to accommodate her physical disability. While disparate treatment claims under the Rehabilitation Act are analyzed under *McDonnell Douglas,* failure to provide reasonable accommodation claims, by contrast, are evaluated under a "modified" burden shifting analysis that derives from *McDonnell Douglas*, but focuses on whether the employer failed to fulfill an affirmative duty to reasonably accommodate. *Peebles*, 354 F.3d at 766-67. In the present case, the Army alleges that Shepard cannot satisfy a *prima facie* case for a failure to accommodate case. Specifically, the Army contends (1) that Shepard cannot establish that she had a qualifying disability under the Rehabilitation Act, and (2) that Shepard suffered no materially adverse employment action by the Army. In addressing the Army claims, the Court must first consider the nature of the requisite *prima facie* case.[6]

---

[5] The federal government as an employer is <u>not</u> subject to disability discrimination claims under the Americans with Disabilities Act of 1990, 42 U.S.C. §§ 12101, *et seq*. ("ADA"). *See, e.g*, *Jones v. Potter*, 488 F.3d 397, 403 (6th Cir. 2007); *Mannie v. Potter*, 394 F.3d 977, 982 (7th Cir. 2005). Instead, federal employers are governed by Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794, which provides "the sole remedy for federal employees claiming disability discrimination." *Id*. Nonetheless, it well-settled that "[b]ecause the same basic standards and definitions are used under both Acts, cases interpreting either are applicable and interchangeable for purposes of [a summary judgment analysis]." *Allison v. Department of Corrections*, 94 F.3d 494, 497 (8th Cir. 1996).

[6] It should be noted that the parties themselves do not address *Peebles* or the modified *McDonnell Douglas* test, but merely argue the elements associated with the traditional *McDonnell Douglas* analysis.

Under the "modified" *McDonnell Douglas* test, the courts are in harmony in requiring a plaintiff – at a minimum – to establish:

> (1) the employer knew about the employee's disability, (2) the employee requested accommodations or assistance for his disability, (3) the employer did not make a good faith effort to assist the employee in seeking accommodations, and (4) the employee could have been reasonably accommodated but for the lack of good faith.

*Muldrow v. Department of Defense*, 544 F.Supp.2d 768, 777 (E.D. Ark. 2008). *See also Lybarger v. Potter*, 2009 WL 2407735, op. at *7 (W.D. Mo. Aug. 4, 2009) (listing the same elements). The extent to which there are additional elements to the *prima facie* case is more complicated. As noted above, the Army argues that Shepard cannot establish that she had a qualifying "disability" and that Shepard suffered no materially adverse employment action. The former matter is clearly an appropriate aspect of a *prima facie* case since it determines any plaintiff's basic right to assert a claim under the Rehabilitation Act.

The latter argument (requiring an adverse employment action), however, has met with differing resolution by federal courts. Some courts have held that the failure to accommodate is itself an adverse action, and, in such cases, a plaintiff need not show any other type of adverse employment action. *See*, *e.g.*, *Williams v. Philadelphia Housing Authority Police Dept.*, 380 F.3d 751, 761 (3d Cir. 2004) ("Adverse employment decisions in this context include refusing to make reasonable accommodations for a plaintiff's disabilities."); *Nawrot v. CPC International*, 259 F.Supp.2d 716, 723 (N.D. Ill. 2003) ("This Court holds that [a plaintiff] is not required to prove an adverse employment action as part of his failure to accommodate *prima facie* case."). The reasoning of these courts focuses on the affirmative duty to accommodate placed on an employer. This reasoning finds some support in the Eighth Circuit's opinion in *Peebles*:

> In a reasonable accommodation case, the 'discrimination' is framed in terms of the failure to fulfill an affirmative duty – the failure to reasonably accommodate the disabled individual's limitations. . . . <u>The concern is compelling behavior, not policing an employer's actions that, when accompanied by an invidious discriminatory intent, are unlawful</u>. As such, it is not the employer's discriminatory intent in taking an adverse employment action against a disabled individual that matters. Rather, discrimination occurs when the employer fails to abide by a legally imposed duty. The known disability triggers the duty to reasonably accommodate and, if the employer fails to fulfill that duty, we do not care if he was motivated by the disability.

*Peebles*, 354 F.3d at 767(*emphasis added*).

However, notwithstanding the language in *Peebles*, the Eighth Circuit (while not addressing the controversy) still appears to require plaintiffs pursuing a disability discrimination case based on a failure to reasonably accommodate to show that they have suffered a material adverse employment action. *See*, *e.g.*, *Huber v. Wal-Mart Stores, Inc.*, 486 F.3d 480, 482 (8th Cir. 2007) ("To make out a *prima facie* case in a reasonable accommodation claim [plaintiffs] must show [they] suffered an adverse employment action as a result of the disability."). This Court is bound by Eighth Circuit precedent and, thus, will consider that Shepard's *prima facie* case herein requires that she establish an adverse employment action.

Turning first to the question of disability," as in other matters, the Eighth Circuit has looked to the ADA in determining whether an individual has a "disability" for purposes of the Rehabilitation Act. *Peebles*, 354 F.3d at 765, 765 n.4. To that end, the ADA defines disability as "(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(2). Major life activities include caring for one's self, performing manual tasks, walking, seeing, hearing, breathing, learning and working. *E.E.O.C. v.*

*Woodbridge*, 263 F.3d 812, 814 (8th Cir. 2001). An impairment is "substantially limiting" if it renders an individual unable to perform a major life activity that the average person in the general population can perform, or if it significantly restricts the condition, manner, or duration under which an individual can perform a particular major life activity as compared to an average person in the general population. *Id*. The determination of whether an individual is substantially limited in a major life activity must be made on a case by case basis. *Fjellestad v. Pizza Hut of America, Inc.*, 188 F.3d 944, 949 (8th Cir.1999). A person is substantially limited in working if he is "significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills, and abilities." *Id*. The factors to be considered include: the number and type of jobs from which the impaired individual is disqualified; the geographical area to which the individual has reasonable access; and the individual's job training, experience, and expectations. *Id*.

The Eighth Circuit has stated that "the ADA is concerned with preventing substantial personal hardship in the form of significant reduction in a person's real work opportunities." *Webb v. Garelick Manufacturing Co.*, 94 F.3d 484, 488 (8th Cir.1996). A court, thus, must ask if a person's particular impairment constitutes a significant barrier to employment in a class of jobs or a broad range of jobs. *Id.* The person's expertise, background, and job expectations are relevant in defining the class of jobs used to determine whether the person is disabled. *Id*.

In the present case, Shepard asserts that she suffers from hypertension and that her condition, when exasperated, limits her ability to perform the major life activity of walking (as well as other matters). The Army argues that there insufficient evidence to establish a trialworthy issue that Shepard's hypertension impacted her walking ability. Moreover, the Army

9

asserts that Shepard's hypertension was controllable by medicine and thus was not disabling. *Compare Hill v. Kansas City Area Transportation Authority*, 181 F.3d 891, 894 (8th Cir. 1999) (finding that a plaintiff's hypertension was not an ADA disability because "when medicated [the plaintiff's] high blood pressure does not substantially limit [her] in any major life activity").

In response to the contentions of the Army, Shepard has provided the Court with medical records that, read in the light most favorable to Shepard, establish:

> (1) Shepard's blood pressure medication was only partially successful in controlling her hypertension and her doctor's changed her medication on different occasions in an attempt to find a maximally effective solution, and
>
> (2) As a result of her high blood pressure (and/or the medication for her condition), Shepard experienced difficulty in walking, dizziness, black-out spells, vertigo, disorientation, blurred vision, panic attacks, and ear popping.

Given the fact that this case is still at the summary judgment, the Court concludes that Shepard does proffer sufficient evidence to create a genuine issue of material fact as to whether she suffered from a "disability" under the Rehabilitation Act.

With regard to adverse employment actions taken by the Army as a result of her disability, Shepard only raises one issue in summary judgment pleadings – her temporary detail to another position at Whiteman AFB. In May of 2006, as matters were escalating between Shepard and Wilkes, Wilkes submitted a request for "a location change to BMPTD[7] . . . which would definitely aid in leveling out her blood pressure disability." In response, the Army provided Shepard with a temporary detail to BMPTD. In retrospect, Shepard argues that the

---

[7] Basic Military Police Training Division.

position to which she was assigned with BMPTD was equally stressful (*viz-a-viz* her hypertension) as her old job – a fact that she argues should have been known to the Army.

The Court cannot find that Shepard's detail to BMPTD was a materially adverse employment action. Setting aside the fact that the transfer was instigated at Shepard's request, and even affording Shepard the most generous reading of the evidence, the transfer only placed Shepard in a position that was as stressful as Lead Supply Technician. Shepard has presented no evidence that the temporary transfer caused her any loss in pay, grade, promotion track, prestige, work hours, or other benefits.

> An adverse employment action must be one that produces a material employment disadvantage. Termination, cuts in pay or benefits, and changes that affect an employee's future career prospects are significant enough to meet the standard, as would circumstances amounting to a constructive discharge. Minor changes in duties or working conditions, even unpalatable or unwelcome ones, which cause no materially significant disadvantage do not satisfy the prong.

*Higgins v. Gonzales*, 481 F.3d 578, 584 (8th Cir. 2007). *See also Brown v. Cox*, 286 F.3d 1040, 1045 (8th Cir. 2002) (under the ADA, "a transfer from one job to another is not an adverse employment action if it involves only minor changes in the employee's working conditions with no reduction in pay or benefits"). Under these facts, the Court concludes that Shepard has not established a *prima facie* case of disability discrimination under the Rehabilitation Act for an alleged failure to accommodate.

### C.  Hostile work environment

In order for Shepard to succeed on her hostile work environment due to harassment on account of her disability, Shepard must show that: (1) she is a qualified individual with a disability; (2) she was subject to unwelcome harassment; (3) the harassment was based on her

disability or a request for accommodation; (4) the harassment was sufficiently severe or pervasive to alter the conditions of her employment and to create an abusive working environment; and (5) the Army knew of or should have known of the harassment and failed to take prompt remedial action. *Shaver v. Independent Stave Co.*, 350 F.3d 716, 720 (8th Cir.2003) (recognizing that a hostile work environment claim can be cognizable under the ADA). *See also Hiller v. Runyon*, 95 F.Supp.2d. 1016, 1022-24 (S.D. Iowa 2000) (assuming existence of a hostile work environment claim under the Rehabilitation Act). Evidence of a hostile work environment is based on the totality of the circumstances of the work environment. *Delph v. Dr. Pepper Bottling Co. of Paragould, Inc.*, 130 F.3d 349, 355 (8th Cir.1997). Moreover, for harassment to affect a term, condition or privilege of employment, it must have been "so severe or pervasive as to alter the conditions of the victim's employment and create an abusive working environment." *Hiller*, 95 F.Supp.2d at 1026 (*quoting Wallin v. Minnesota Dept. of Corrections*, 153 F.3d 681, 688 (8th Cir.1998)). Finally, it is not enough that an employee personally felt the work environment was hostile, the harassment must be sufficient to create an <u>objectively</u> hostile environment. *Palesch v. Missouri Commission on Human Rights*, 233 F.3d 560, 566 (8th Cir. 2000). It is on this latter ground that the Army seeks summary judgment.[8]

In support of her claim of a hostile work environment, Shepard asserts:

> In February of 2006, Wilkes told her Shepard was "just fat" and needed to begin working out.
>
> Wilkes placed pamphlets on a break room table where Shepard ate lunch that addressed the effects of being overweight, including hypertension and depression.

---

[8] The Army again argues that Shepard does not have a qualifying disability, but – for purposes of summary judgment – the Court rejects that argument for the same reasons previously stated.

> On February 3, 2006, Wilkes accused Shepard of causing budgetary problems by confronting her in the parking lot.
>
> On July 10, 2006, Wilkes required Shepard to "go pick up radios" in a hot warehouse.
>
> On August 1, 2006, Shepard suffered from heat exhaustion after "going from building to building in 100 degree weather.
>
> Wilkes only conversed with Shepard through e-mails and said e-mails "had a harsh tone of authority and scolding" and never contained "an encouraging word,"
>
> Wilkes singled Shepard out and "micro-managed" her job performance[9]

Upon this record, the Court does not find that the conduct alleged by Shepard (however upsetting to her personally) is sufficient to create an <u>objectively</u> hostile work environment. Generally, "isolated incidents (unless extremely serious) will not amount to discriminatory changes in the 'terms and conditions of employment.'" *Meriwether v. Caraustar Packaging Co.*, 326 F.3d 990, 993 (8th Cir. 2003 (*quoting Faragher v. City of Boca Raton*, 524 U.S. 775, 788,

---

[9] In the sworn testimony presented to the Court, Shepard insinuates that there were other actions taken by the Army (and Wilkes particularly) that constituted harassment. When asked about any other incidents supporting her claim of disability discrimination, Shepard testified:

> Well, there's probably a lot of different things. There was a lot of different e-mails and different things that I'm not going to be able to name for you altogether. But, yes, I would say that [the above listed incidents] was probably it. That was the discrimination part of it.

Shepard's testimony is too indefinite to support the Court considering these alleged additional 'different things."

13

118 S.Ct. 2275, 2283 (1998)). In another case, the Eighth Circuit found no actionable harassment despite allegations by the plaintiff that:

> Some of . . . [her] immediate supervisors stopped talking to her and treated her rudely, followed her around, glared at her, slammed doors in her face [and] "keyed" (scratched the finish with a sharp object such as a car key) her car on the plant parking lot.

*Scusa v. Nestle U.S.A. Company, Inc.*, 181 F.3d 958, 967 (8th Cir. 1999). In addition, in *Hannoon v. Fawn Engineering Corp.*, 324 F.3d 1041 (8th Cir. 2003), the Eighth Circuit noted that instances of "criticism" are distinguishable from alleged "acts of harassment." *Id*. at 1048. Inasmuch as the Court finds that Shepard cannot establish a *prima facie* case of harassment based on disability, the Army is entitled to summary judgment on that claim.

Accordingly, it is

**ORDERED** that the DEFENDANTS' MOTION FOR SUMMARY JUDGMENT, filed October 7, 2009 [Doc. 10] is **GRANTED**.

                                    */s/ John T. Maughmer*
                                   **JOHN T. MAUGHMER**
                                   **U. S. MAGISTRATE JUDGE**